UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHILIP EIL, <br>     Plaintiff, <br> v. <br><br> U.S. DRUG ENFORCEMENT <br> ADMINISTRATION, <br>     Defendant. | C.A. No. 1:15-cv-99-M-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Philip Eil, an award-winning freelance journalist, filed a Freedom of Information Act (FOIA)[1] request with the U.S. Drug Enforcement Administration seeking copies of all the exhibits the government had introduced in the criminal trial of Dr. Paul H. Volkman. The government initially objected to producing any documents but eventually produced some of the requested documents, most of them heavily redacted. Mr. Eil filed this complaint in order to obtain unredacted copies of the produced exhibits and copies of the remaining non-produced exhibits. Because this Court finds that the public interest in disclosure can be accomplished while safeguarding many of the privacy interests of those involved, the Courts GRANTS Philip Eil's Motion for Summary Judgment (ECF No. 15) and DENIES the DEA's Motion for Summary Judgment. (ECF No. 16).

---

[1] 5 U.S.C. § 552.

*FACTS*

The United States government charged Dr. Volkman in a 22-count indictment with a variety of drug related charges.[2] In announcing the indictment, the government alleged that Dr. Volkman "handed out more than 1,500,000 pain pills between October 2001 and February 2006," made $3,087,500 from this scheme, and caused the "the deaths of at least 14 people." The government proclaimed that the "indictment serves as a warning to all medical professionals that if you illegally prescribe medication for personal gain you will be prosecuted to the fullest extent of the law." (ECF No. 15-4).

The U.S. District Court for the Southern District of Ohio held a public jury trial of Dr. Volkman in March 2011. At that trial, the government presented 70 witnesses and introduced more than 220 exhibits. Most of these exhibits were the medical records of former patients of Dr. Volkman. The government never sought to have these records sealed, and it did not redact the names or any other personally identifiable information of Dr. Volkman's former patients from the records. The trial court on its own never sealed the records or required the redaction of personally identifiable information from the exhibits.

After an eight-week trial, the jury convicted Dr. Volkman of 20 of the 22 counts brought against him. The court sentenced him to four consecutive life terms

---

[2] The government charged Dr. Volkman with: conspiring to unlawfully distribute a controlled substance in violation of 21 U.S.C. § 841(a); maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(l); the unlawful distribution of a controlled substance leading to death in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and (2).

of imprisonment.  Dr. Volkman appealed his sentence to the U.S. Court of Appeals for the Sixth Circuit.  The Sixth Circuit twice denied his appeal.[3]

Since shortly after the trial,[4] Mr. Eil has sought access to copies of the admitted trial exhibits used to convict Dr. Volkman.  Dr. Volkman was a college and medical school classmate of Mr. Eil's father.  Mr. Eil was "intrigued" by the question of how Dr. Volkman, "with a MD/PhD from the University of Chicago [could] turn into, according to the government's allegations, a prodigious drug dealer and medical mass-murderer."  (ECF No. 15-1 at 2 n. 1).  After making this criminal prosecution the subject of his thesis project for the nonfiction-writing program at the Columbia University School of the Arts, Mr. Eil decided to write a book on his investigation of Dr. Volkman's prosecution and conviction.

The uncontroverted evidence in this case reveals that Mr. Eil requested access to the Volkman trial exhibits from the Clerk of the U.S. District Court for the Southern District of Ohio, the Clerk of the U.S. Court of Appeals for the Sixth Circuit, lead prosecutor Assistant United States Attorney Timothy D. Oakley, and trial Judge Sandra S. Beckwith.  Each of these people denied Mr. Eil's request for the trial exhibits.  Both A.U.S.A. Oakley and Judge Beckwith instructed or assured

---

[3] *United States v. Volkman*, 736 F.3d 1013 (6th Cir. 2013), *vacated*, 135 S. Ct. 13 (2014).  The U.S. Supreme Court vacated that judgment and remanded the case to the Sixth Circuit for further proceedings.  *Volkman v. United States*, 135 S. Ct. 13 (2014).  Upon remand, the Sixth Circuit again upheld Dr. Volkman's conviction. *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 348 (2015).

[4] Mr. Eil attended some of the trial, but after the government issued a subpoena to him as a potential witness in the trial, he could no longer attend the trial.  The government never called Mr. Eil to testify.

Mr. Eil that FOIA was the proper avenue for accessing these materials. Following this advice, Mr. Eil filed a FOIA request on February 1, 2012, with the Executive Office of the United States Attorneys ("EOUSA"). Nine months later, the EOUSA transferred the request to the Defendant, U.S. Drug Enforcement Administration.

Mr. Eil requested copies of the 220 trial exhibits that the government had admitted into evidence, consisting of approximately 15,000 pages. In total, the DEA partially released 3,813 pages of information, and the government largely redacted many of those pages. These productions represent about twenty-five percent of the pages admitted as full exhibits. Withholding the bulk of the materials, the DEA asserts privacy concerns for the individuals whose records the government had admitted at trial.[5]

Specifically, the government redacted from the trial exhibits the following:

- Identifying information of third parties, including names, social security numbers, addresses, telephone numbers, dates of birth or death, medical and tax record numbers, insurance information, employment information, and other particularly unique and sensitive personal and medical information, pursuant to § 552(b)(6) and (b)(7)(C);
- Identifying information of criminal investigators, pursuant to § 552(b)(6), (b)(7)(C) and (b)(7)(f); and
- DEA numbers, pursuant to § 552(b)(7)(e).[6]

Additionally, the DOJ withheld in their entirety:

- Medical records of individuals named in the transcript of the Volkman trial, pursuant to § 552(b)(6) and (b)(7)(C);

---

[5] The transcript of the entire trial, including the names of the victims and references to some of their medical records, as well as a listing of trial exhibits with descriptions of each exhibit, including the third parties' names, is publicly available. (ECF No. 15-29).

[6] Mr. Eil does not seek "disclosure of either the identifying information of criminal investigators or DEA numbers." (ECF No. 15-1 at 7 n. 11).

- Detailed autopsy and toxicology reports, reports of post-mortem exams, and photographs of deceased patients, pursuant to § 552(b)(6) and (b)(7)(C); and
- Tax records of an individual, pursuant to § 552(b)(7)(C).

(ECF No. 15-1 at 7-8).

## *PROCEDURE*

Mr. Eil filed this Complaint in March 2015 against the U.S. Drug Enforcement Administration. (ECF No. 1). He seeks a declaration that the DEA wrongfully withheld and redacted documents, an injunction ordering the DEA to provide access to the requested documents, and an award of costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E). *Id.* at 11. The parties agreed that this matter should be resolved through the filing of cross motions for summary judgment (ECF Nos. 15, 16), to which both parties responded. (ECF Nos. 18, 19). This Court held a hearing on the cross-motions on August 3, 2016.

## *ANALYSIS*

"FOIA is one of the central tools to create transparency in the Federal government. FOIA should be a valuable mechanism protecting against an insulated government operating in the dark, giving the American people the access to the government they deserve." (ECF No. 15-37 at 3).

Public scrutiny of the workings of government—including the judiciary—is vitally important to the proper functioning of our democracy. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Because of this importance, FOIA "presumes public entitlement to agency information." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 556 (1st Cir. 1992). "By establishing a

presumption in favor of agency disclosure, Congress aimed to 'expose the operations of federal agencies to public scrutiny.'" *Stalcup v. CIA*, 768 F.3d 65, 69 (1st Cir. 2014) (quoting *Providence Journal*, 981 F.2d at 556). FOIA provides, with exceptions, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, play, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

The statute sets forth nine exemptions from this production requirement—two of which appear to be applicable here. First, FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Second, FOIA excludes from production "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[7] Exemption 7(C) offers the government a broader privacy exemption; therefore, this Court need only consider the application of Exemption 7(C). *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989).

The FOIA exemptions are to be narrowly construed (*Stalcup*, 768 F.3d at 69), and all doubts are to be resolved in favor of disclosure. *U.S. Dep't of Justice v.*

---

[7] The DEA also asserted the exemption contained in § 552(b)(7)(E) concerning techniques and procedures of law enforcement investigations or prosecutions, but Mr. Eil is no longer seeking any information that would fall into that exception. (ECF No. 15-1 at 7 n. 11).

*Julian*, 486 U.S. 1, 8 (1988).   It is the government's burden to establish the applicability of any exemption.  5 U.S.C. § 552(a)(4)(B);  *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006).

When the government relies on exemptions for withholding documents from public production, the court is required "to balance these privacy interests against the public interest in disclosure." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 251 (1st Cir. 2013) (citing *Maynard v. CIA*, 986 F.2d 547, 566 (1st Cir. 1993)).  This balance requires the Court to evaluate the competing societal interests.  In doing so, the Court will look at each of these two competing interests.

*Public interest in disclosure of judicial records*

"[T]he common law presumption that the public ought to have access to judicial records" underscores the import attached to the public's interest in judicial records. *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987).  The United States Supreme Court has acknowledged that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

> [The First] Circuit, along with other circuits, has established a First Amendment right of access to records submitted in connection with criminal proceedings.  The basis for this right is that without access to documents the public often would not have a "full understanding" of the proceeding and therefore would not always be in a position to serve as an effective check on the system.

*Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir. 1989) (citation omitted) (quoting *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984)).

"Courts long have recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.' This recognition has given rise to a presumption that the public has a common-law right of access to judicial documents." *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9–10 (1st Cir. 2002) (citation omitted) (first quoting *Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) and then citing *Nixon*, 435 U.S. at 597).

Public scrutiny of judicial proceedings produces a myriad of societal benefits. Recent examples of tenacious journalists exposing potential flaws in criminal cases illustrate this axiom.[8] For example, in the case of Adnan Syed's murder conviction, memorialized in season one of a popular podcast entitled *Serial* by Sarah Koenig,[9] Ms. Koenig exposed facts from his trial that contributed to Maryland state court Judge Martin P. Welch granting the defendant a new trial.[10] Another recent example flows from "Making a Murderer," Netflix's 10-episode series concerning a murder in Manitowoc, Wisconsin.[11] A Milwaukee state court jury convicted Brendan Dassey of first-degree intentional homicide and sentenced him to life in

---

[8] "[T]he specific purpose for which the information is requested" plays no role in determining public interest. *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 440 (1st Cir. 2006) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989).

[9] Sarah Koenig, *Serial: Season One*, https://serialpodcast.org/season-one (last updated February 7, 2016).

[10] *Syed v. State*, No. 199103042-046, (Cir. Ct. Balt. City June 30, 2016) (baltimorecitycourt.org). *See* Jonah Engel Bromwich & Liam Stack, *Adnan Syed, of 'Serial' Podcast, Gets a Retrial in Murder Case*, N.Y. TIMES (June 30, 2016), http://www.nytimes.com/2016/07/01/us/serial-adnan-syed-new-trial.html?_r=0.

[11] Moira Demos & Laura Ricciardi, *Making a Murderer*, NETFLIX, https://www.netflix.com/title/80000770 (last visited Sept. 6, 2016).

prison.   In federal post-conviction relief, Magistrate Judge William Duffin[12] recently granted Mr. Dassey's petition for a writ of habeas corpus and ordered his retrial or release in ninety days.[13]

> Public access to trial materials upholds many values of our justice system.[14]
>
> Openness of trials was observed . . . to contribute "assurance that the proceedings were conducted fairly . . . , discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality."  Another value served was that of "public acceptance of both the process and its results," "awareness that society's responses to criminal conduct are underway," the "prophylactic aspects of . . . community catharsis."  These interests seem clearly implicated in this age of investigative reporting and of continuing public concern over the integrity of government and its officials.

*Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 503 (1st Cir. 1989) (citations omitted) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 571 (1980)).

The public interest at issue must relate to the underlying purpose of FOIA: "to open agency action to the light of public scrutiny."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't*

---

[12] *Dassey v. Dittmann*, No. 14-CV-1310, 2016 WL 4257386 (E.D. Wis. Aug. 12, 2016), ECF No. 23.  *See* Daniel Victor, *Conviction Against Brendan Dassey of "Making a Murderer" Is Overturned*, N.Y. TIMES (August 12, 2016), http://www.nytimes.com/2016/08/13/us/brendan-dassey-making-a-murderer.html.

[13] Nothing in this Court's memorandum and order should be taken in any way to imply that the Court has the opinion that Dr. Volkman's conviction is invalid or was the result of any improper procedures.  The Court notes these examples simply to highlight the importance of public scrutiny of criminal judicial proceedings.

[14] Importantly, this case does not involve disclosure of matters before or during a trial.  A very different analysis by the trial judge would have to take place under those circumstances because the court would have legitimate concerns with a party's right to a fair trial without prejudicial publicity.

*of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).   The relevant inquiry, when evaluating public interest, is whether disclosure will show citizens "what their government is up to." *Bibles v. Or. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (per curium) (quoting *U.S. Dep't of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 497 (1994)) (internal quotation marks omitted).

In this case, the public has an interest in the court records from Dr. Volkman's trial because it allows the public to know "what their government is up to" in carrying out its investigative and judicial functions.  *Id.*  Specifically, disclosing the court exhibits allows the public to know what evidence the government had that caused it to tout the indictment of Dr. Volkman as a "warning to all medical professionals that if [they] illegally prescribe medications for personal gain [they] will be prosecuted to the fullest extent of the law." (ECF No. 15-1 at 2). Because the information petitioned for disclosure is the very information used to convict Dr. Volkman, the public interest in this information cannot be served in any way other than by releasing the court exhibits.  Indeed, these particular documents are an integral part of a serious investigation and prosecution by the DEA.  The government selected each of these requested exhibits to present as full exhibits at trial.  These exhibits led to Dr. Volkman's ultimate conviction and sentence to four consecutive life terms in prison.  The exhibits Mr. Eil seeks ultimately demonstrate how and why Dr. Volkman was convicted—that is, how the DEA carried out its statutory obligations as a government agency with respect to Dr. Volkman and how the judiciary handled his trial.

The public has a proper interest in the evidence used by the DEA to delineate between legitimate and illegal prescriptions in the conviction of Dr. Volkman. The medical record exhibits shed light on whether patients died because of Dr. Volkman's unlawful prescribing. This question was at the very heart of the trial because expert witnesses disagreed about the implications of these medical records. The records demonstrate what the DEA was up to in carrying out its statutory duties of investigating and prosecuting Dr. Volkman.[15] The government could not prove illegal activity, and the jury could not convict Dr. Volkman for that activity without a review of these records. The details of the government's strategy of proving Dr. Volkman's illegitimacy are also significant, given the public controversy within the field of pain management about the proper prescribing of opiates. The records at issue in this case are not simply records "accumulated in various governmental files"; they are the very records that the government relied upon to prosecute Dr. Volkman and the jury used to convict him.

> "Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. In a sense, this validates the media claim of functioning as surrogates for the public." If the press is to fulfill its function of surrogate, it surely cannot be restricted to report on only those judicial proceedings that it has sufficient personnel to cover contemporaneously.

---

[15] The importance of the information contained in these records is further highlighted by the fact that the jury did not convict Dr. Volkman on Count IV of the indictment (causing the death of an individual by unlawfully dispensing a medication not for a legitimate purpose) but did convict him on causing the deaths of other patients. Because the jury determined that in one instance Dr. Volkman had not caused the death of his patient but did in other instances, the decision must have been specifically tied to their medical records exhibits.

*Pokaski*, 868 F.2d. at 504 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572–73 (1980)).

"[O]nly the most compelling showing can justify post-trial restriction on disclosure of testimony or documents actually introduced at trial." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993). "Open trials protect not only the rights of individuals, but also the confidence of the public that justice is being done by its courts in all matters, civil as well as criminal." *Id.* "As we have said elsewhere, '[o]nly the most compelling reasons can justify the non-disclosure of judicial records.'" *Id.* (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). In this case, the public has a strong interest in staying apprised of the government's investigation and the judicial proceedings that led to the conviction of Dr. Volkman.

*Individual privacy interests involved*

Does further public dissemination of third parties' medical records that have already been introduced into a public trial present a "compelling showing" sufficient to justify their non-disclosure now? It is hard to take the government's vehement arguments asserting the strong privacy interests of the third parties here too seriously. The government introduced unredacted copies of previously private medical records into a public trial. The government never requested that the trial court seal the documents, and it never sought to have personally identifiable information on the documents redacted. Moreover, when the government filed documents on the Court's public website PACER as part of its opposition to

12

Dr. Volkman's appeal, it publicly filed medical records of an individual, containing his name and private medical records.[16]   The government to this date has not sought an order from the trial court or the Sixth Circuit seeking to seal any of the private medical records that were trial exhibits.   Moreover, it has allowed the trial transcript containing all of the names of the third parties and discussion of their medical conditions to remain available to the public.

Nevertheless, regardless of the government's prior failure to take measures to protect the privacy interest of those third parties, it is this Court's obligation to make a determination of the privacy interests involved.   "[P]rior revelations of exempt information do not destroy an individual's privacy interest. . . . The privacy interests the government seeks to uphold remain as strong now as they were before."   *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 251 (1st. Cir. 2013). "[P]atients have a privacy interest under the United States Constitution in their medical records . . . ."   *In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987). These types of records are considered "highly personal" and "intimate in nature." *Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65, 68 (1st Cir. 1981) (quoting *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392 ,398 (D.C. Cir. 1980), *abrogated by U.S. Dep't of State v. Wash. Post. Co.*, 456 U.S. 595, 598 (1982)).   "[T]he 'privacy rights of participants and third parties' are among those

---

[16] During the course of the appeal in Dr. Volkman's case, the government, as part of opposition to the appeal, uploaded sixteen unredacted or partially redacted trial exhibits (a total of 60 pages), including personally identifiable information of some of the victims, to the Court's public access website PACER. The government turned over these unredacted documents to Mr. Eil.

interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *In re Knoxville News-Sentinel Co.,* 723 F.2d 470, 478 (6th Cir. 1983) (quoting *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir. 1983)).

The folks whose medical records are involved here are innocent, uninvolved third parties to the criminal prosecution of Dr. Volkman. It is an unfortunate fact that the court exhibits contain intimate details of private individuals. When information about private citizens "is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989).

*The Balance*

Mr. Eil "acknowledges the delicate balance at play here: the documents at issue were exhibits at a public trial, but these records also contain information that is normally private." (ECF No. 18 at 2). What makes this matter challenging to analyze is that the privacy interests of the individuals whose medical records the government had admitted at the public trial were not protected at that time.[17]

"When faced with a claim that cause sufficiently cogent to block access has arisen, it falls to the courts to weigh the presumptively paramount right of the

---

[17] "At the time that confidential information is offered in evidence, the trial judge has ample power to exclude those portions that have limited relevance but contain trade secrets or other highly sensitive information." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 534 (1st Cir. 1993) (citing FED. R. EVID. 403).

public to know against the competing private interests at stake." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (citing *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 478). The Court must strike this balance "in light of the relevant facts and circumstances of the particular case." *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 599) (internal quotation marks omitted).

Attempting to balance these potentially competing interests, the Court finds that it can protect most of the privacy interests of the third parties by excluding personally identifiable information in the exhibits. Moreover, in this case, redacting the trial exhibit numbers will prevent an individual from easily matching up the exhibits with the transcript to identify one of the third parties. The Court cannot completely protect the privacy interests of the third parties because personally identifiable information has already been released in the transcript and exhibits attached to the DEA's appellate brief. Instead, the Court minimizes the invasion of privacy by ordering the DEA to redact highly personal information of no consequence to the trial or conviction of Dr. Volkman.

Redacting the exhibits in this fashion minimizes the privacy interests implicated; therefore, in this instance, the balance of interests tips in favor of public interest. Once the DEA redacts the exhibit numbers and personally identifiable information as instructed below, the exhibits should be produced. As redacted, the identities of the third parties either cannot be discerned or cannot be easily discerned from the court exhibits, thereby offering protection of the third parties' privacy interests. *Cf. Charles v. Office of the Armed Forces Med. Exam'r*, 935 F.

Supp. 2d 86, 99 (D.D.C. 2013) ("[W]ithout demonstrating that family members will encounter the disclosed information, and be able to discern that a redacted report relates to their family member, the defendants present no more than a mere possibility of an invasion of personal privacy and that is insufficient to find that Exemption 6 applies."). The records of Dr. Volkman's trial can then be subjected to appropriate public scrutiny with minimal intrusion upon the privacy interests of the third parties. This balance best protects the public's right to know and the individuals' privacy interests as envisioned by FOIA.

## CONCLUSION

The Court GRANTS Philip Eil's Motion for Summary Judgment (ECF No. 15) and DENIES the DEA's Motion for Summary Judgment (ECF No. 16) as follows:

1. The DEA shall produce within 60 days, copies all exhibits admitted into evidence at the criminal trial of Paul H. Volkman.

2. The DEA may redact from the exhibits only the following:

   a. the names, social security numbers, addresses, telephone numbers, dates of birth, medical and tax record numbers, and insurance numbers of the third parties;

   b. identifying information of criminal investigators and DEA numbers; and

   c. the trial exhibit number and instead shall substitute an alternative identifying character in each place where a trial exhibit number was located.

16

3.   The parties may address any requests for attorney fees or costs by a subsequent motion.


SO ORDERED:

_____

John J. McConnell, Jr.
United States District Judge

September 16, 2016